# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| **KRISZTINA R. SZENTKIRALYI,** | Civil Action No. 17-1889 (SDW) |
| Petitioner, | |
| v. | ORDER |
| **STEVEN AHRENDT, et al.,**[1] | |
| Respondents. | |

**WIGENTON**, District Judge:

Presently before the Court is the petition for a writ of habeas corpus of Petitioner, Krisztina R. Szentkiralyi, filed pursuant to 28 U.S.C. § 2241. (ECF No. 1). Following an order to answer (ECF No. 9), the Government filed a response to the Petition (ECF No. 13), to which Petitioner has replied (ECF Nos. 14-15). For the following reasons, this Court will grant the petition and direct an immigration judge to provide Petitioner with a bond hearing within ten days.

## I. BACKGROUND

Petitioner, Krisztina Szentkiralyi, is a native of citizen of Hungary who entered this country in May 2011 pursuant to the Visa Waiver Program ("VWP"), with permission to remain through August 16, 2011. (Document 1 attached to ECF No. 13 at 2). Petitioner, however, remained in

---

[1] In their answer to the petition for a writ of habeas corpus, Respondents substituted Respondent Eric Taylor in place of former Respondent Oscar Aviles. In her reply, however, Petitioner informed the Court that she has been transferred to the Bergen County Jail. (ECF No. 15 at 1). Because Petitioner is now in the Bergen County Jail, and Steven Ahrendt, the warden of the jail, is now the proper Respondent to Petitioner's habeas petition. *See Rumsfeld v. Padilla*, 542 U.S. 426, 436 (2004); *Yi v. Maugans*, 24 F.3d 500, 507 (3d Cir. 1994). The Clerk of the Court shall therefore be directed to amend the caption of this matter to reflect this substitution, and former Respondents Oscar Aviles and Eric Taylor shall be dismissed from this matter without prejudice.

this country beyond that date, and in October 2012 was convicted of Fifth Degree possession of stolen property in the Criminal Court of the City of New York. (*Id.*). Although Petitioner received a conditional discharge in that matter, she was thereafter also convicted of First Degree identity theft in the Supreme Court of New York, Queens County, on July 21, 2014, for which she received a one year prison sentence. (*Id.*). Following that sentence, Petitioner received several more convictions – including a petit larceny charge for which she was sentenced to time served in August 2014, a Third Degree grand larceny charge in New York for which she received a six month sentence, and a January 2016 disorderly conduct charge which resulted in a conditional discharge. (*Id.* at 2-3). In addition to her criminal record in New York, Petitioner has been subject to an INTERPOL red notice from Hungary since June 2015 which was issued by Hungarian officials who possess an outstanding arrest warrant for Petitioner charging her with fraud. (*Id.* at 3).

On June 10, 2016, immigration officials took Petitioner into custody and placed her into expedited removal proceedings pursuant to 8 U.S.C. § 1187. (*Id.* at 2). Petitioner has remained in immigration detention since that time. (*Id.* at 2-4). During her detention Petitioner has sought, and been denied, release on parole on several occasions, and has also had a bond hearing during which an immigration judge determined that she lacked jurisdiction to grant bond pursuant to the Board of Immigration Appeals' ("BIA's") decision in *Matter of A.W.*, 25 I&N Dec. 45 (BIA 2009) as Petitioner was subject to the VWP. (*Id.* at 3). Although Petitioner was issued a removal order via the VWP in June 2016, she has sought relief from that removal order in the immigration courts since June 20, 2016. (*Id.* at 3). On April 21, 2017, an immigration judge denied Petitioner's requests for relief, and both the Government and Petitioner reserved the right to appeal. (*Id.* at 4). On or about May 15, 2017, Petitioner filed an appeal of the immigration judge's decision denying

her relief from removal with the BIA, which apparently remains pending at this time. (Document 3 attached to ECF No. 14).

## II. DISCUSSION

### A. Legal Standard

Under 28 U.S.C. § 2241(c), habeas relief may be extended to a prisoner only when he "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). A federal court has jurisdiction over such a petition if the petitioner is "in custody" and the custody is allegedly "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3); *Maleng v. Cook*, 490 U.S. 488, 490 (1989). As Petitioner is currently detained within this Court's jurisdiction, by a custodian within the Court's jurisdiction, and asserts that his continued detention violates due process, this Court has jurisdiction over his claims. *Spencer v. Kemna*, 523 U.S. 1, 7 (1998); *Braden v. 30th Judicial Circuit Court*, 410 U.S. 484, 494-95, 500 (1973); *see also Zadvydas v. Davis*, 533 U.S. 678, 699 (2001).

### B. Analysis

#### 1. The statutory basis of Petitioner's detention

Petitioner argues in her habeas petition that her ongoing detention without a bond hearing violates Due Process. In order to address this claim, this Court must first address the statutory basis for Petitioner's detention. While Petitioner asserts that she is detained pursuant to 8 U.S.C. § 1226(c) because she is deportable by way of having committed an enumerated offense, the Government contends that she is instead subject to detention pursuant to 8 U.S.C. § 1187 because

she entered this country pursuant to the Visa Waiver Program. In making that argument, the Government relies upon the BIA's interpretation of the VWP statute announced in *Matter of A.W.*

By way of background, the VWP is a special program which permits aliens from certain specified countries to enter the United States for a period of up to ninety days without first obtaining a visa. *See Shehu v. Att'y Gen.*, 482 F.3d 652, 654 (3d Cir. 2007). While the VWP makes a brief visit to this country more expedient, that expediency comes at a cost – VWP entrants voluntarily waive their right to challenge the basis for their removal and are permitted to challenge their removal only by way of an application for asylum, withholding of removal, or relief under the Convention Against Torture. *Id.*; *see also* 8 U.S.C. § 1187(b). As a result, a final order denying those three forms of relief is considered a final removal order for VWP entrants, and they may be removed without further process once such an administratively final order is issued. *See Sutaj v. Rodriguez*, No. 16-5092, 2017 WL 66386, at *2 (D.N.J. Jan. 5, 2017). These special restrictions apply to all who enter the United States through the VWP, even those who do so fraudulently. *Id.*

While 8 U.S.C. § 1226 and its various subsections provides the basis for the detention of most aliens during the pendency of their removal proceedings prior to the issuance of a final order of removal, the BIA determined in *A.W.* that VWP aliens are not subject to detention under § 1226, but are instead detained pursuant to 8 U.S.C. § 1187(c)(2)(E). 25 I. & N. Dec. at 47-48. The BIA based this decision on the fact that the authority to grant bond vested in immigration judges is limited, that such authority arises only in the context of areas where that authority has been explicitly delegated to them by the Attorney General, and that the authority to conduct bond hearings which had been delegated arose only in standard removal proceedings following a notice to appear where the alien's detention is controlled by the subsections of 8 U.S.C. § 1226. *Id.* Without detailed explanation, the BIA distinguished VWP aliens by stating that "the statutory

authority for [a VWP alien's] detention is contained in . . . 8 [U.S.C. §] 1187(c)(2)(E) . . . not . . . 8 U.S.C. § 1226." *Id.* at 47. The BIA explained this determination merely by noting that the authority to grant bond to aliens "detained" pursuant to § 1187 no longer belonged to the Attorney General, and thus had not been delegated to the immigration judges who derived their authority from a delegation from the Attorney General. *Id.* at 48.

The lynchpin of the BIA's determination in A.W. is the BIA's determination that § 1187(c)(2)(E) provides statutory authority for the detention of VWP aliens independent of the general authority to detain aliens pending removal pursuant to § 1226. Section 1187(c)(2)(E), which is titled "repatriation of aliens," however, contains no language which expressly authorizes the detention of VWP aliens. Instead, that subsection states that

> [in order to qualify for the VWP t]he government of the country [wishing to qualify must] accept[] for repatriation any citizen, former citizen, or national of the country against whom a final executable order of removal is issued not later than three weeks after the issuance of the final order of removal. Nothing in this subparagraph creates any duty for the United States or any right for any alien with respect to removal or release. Nothing in this subparagraph gives rise to any cause of action or claim under this paragraph or any other law against any official of the United States or of any State to compel the release, removal, or consideration for release or removal of any alien.

8 U.S.C. § 1187(c)(2)(E). Indeed, this language expressly states that it is intended *not* to create any right or duty regarding the "removal or release" of detained aliens. *Id.*

In this matter, the Government argues that this Court should defer to the interpretation of § 1226, § 1187(c)(2)(E), and the corresponding regulations pursuant to the Supreme Court's decision in *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984). At least one court in this District has previously rejected that argument. *See Sutaj*, 2017 WL 66386 at *3-5. In *Sutaj*, as here, the Government argued before Judge Vazquez that this Court should

defer to the BIA's interpretations and find that VWP aliens are not entitled to bond hearings. *Id.*

Judge Vazquez, however, declined to defer to the BIA's ruling in *A.W.*, explaining as follows:

> Pursuant to the Supreme Court's holding in [*Chevron*], an agency's construction of a statute is permissible and given controlling weight unless it is arbitrary, capricious, or manifestly contrary to the statute. 467 U.S. at 844. "The judiciary" must "afford an agency discretion to interpret ambiguous provisions of the agency's organic or enabling statute." *Swallows Holding, Ltd. v. C.I.R.*, 515 F.3d 162, 169 (3d Cir. 2008) (citing *Chevron*, 467 U.S. at 842-43). If a statutory provision is ambiguous, "such ambiguity is viewed as an implicit congressional delegation of authority to an agency, allowing the agency to fill the gap with a reasonable regulation." *Id.* (quoting *MCI Telecomm. Corp. v. Bell Atlantic–Pa.*, 271 F.3d 491, 515–16 (3d Cir. 2001). Courts must "accord [ ] *Chevron* deference [to the BIA] as it gives ambiguous statutory terms 'concrete meaning through a process of case-by-case adjudication.'" *Smriko v. Ashcroft*, 387 F.3d 279, 297 (3d Cir. 2004) (quoting *INS v. Aguirre–Aguirre*, 526 U.S. 415, 425 (1999)). To accord *Chevron* deference, a court first must ask whether "'the statute is silent or ambiguous with respect to the specific issue'" before it; if so, 'the question for the court is whether the agency's answer is based on a permissible construction of the statute.'" *Aguirre-Aguirre*, 526 U.S. [at] 424[] (quoting *Chevron*, 467 U.S. at 843.))
>
> This Court has found only one decision addressing the statutory issue presented here.[] In *Neziri v. Johnson*, the petitioner, an Albanian citizen, was admitted to the United States under the VWP by using a false Italian passport. [No. 15-13282], 2016 WL 2596017[,] at *1. (D. Mass. May 5, 2016). After cooperating with the FBI in a criminal investigation, ICE gave Neziri deferred action status and allowed him to remain in the United States and obtain employment authorization. *Id.* After Neziri was twice arrested for operating a vehicle under the influence, ICE revoked Neziri's deferred action status and ordered him removed as a VWP Violator. *Id.*
>
> The respondent argued that Neziri was not being detained pursuant to 8 U.S.C. § 1226, but that his detention was pursuant to 8 U.S.C. § 1187(c)(2). *Id.* at *2. The respondent asked the court to defer to the BIA's decision in *Matter of A.W.*, and hold that an IJ does not have jurisdiction to redetermine the conditions of custody of an alien admitted pursuant to the VWP. *Id.*

> The court in *Neziri* addressed the BIA's construction of 8 U.S.C. § 1226 in light of *Chevron*. Noting that 8 U.S.C. § 1226 explicitly provides for detention and release of aliens during their removal proceedings, the court in *Neziri* found that Congress had spoken directly to the question at issue, and the regulations implementing 8 U.S.C. § 1226(a) provide for a bail hearing before an IJ. *Neziri*, 2016 WL 2596017, at *2. The court rejected the BIA's finding that "[t]he Attorney General no longer has statutory authority over bond proceedings relating to aliens ... who have been admitted pursuant to the Visa Waiver Program." *Id.* at *3.
>
> The court in *Neziri* recognized that the Homeland Security Act of 2002 transferred virtually all immigration enforcement and administrative functions vested in the Attorney General to the Secretary of Homeland Security, but also found that there was no reason why the Secretary of Homeland Security could not delegate authority to IJs under 8 U.S.C. § 1226(a). *Id.* The court further noted there is nothing in 8 U.S.C. § 1187(c)(2)(E) about detaining aliens. *Id.*
>
> This Court agrees with the reasoning of the *Neziri* court— the BIA arbitrarily and capriciously interpreted the effect of transferring the delegation of immigration enforcement and administrative functions from the Attorney General to the Secretary of Homeland Security. The transfer of authority did not expressly strip the Secretary of Homeland Security of the authority to delegate to an IJ the powers under 8 C.F.R. § 1236.1(d) previously delegated to the Attorney General, and there is no reason to believe there was an intention to do so.
>
> Furthermore, a plain reading of 8 C.F.R. § 1208.2(c)(3)(i) suggests that it limits only the substantive relief from removal for VWP entrants or violators. Allowing VWP violators who are in custody to request a bond redetermination hearing under 8 C.F.R. § 1236.1(d) does not frustrate the intent of the VWP program to limit the types of substantive relief available. A bond determination is a procedural, not substantive, function.

*Id.* at *4-5. Based on the conclusion that *A.W.* was not due *Chevron* deference, Judge Vazquez determined that Petitioner was detained pursuant to § 1226, and not § 1187(c)(2)(E), and determined Sutaj's entitlement to relief accordingly.

This Court finds the reasoning in *Sutaj* and *Neziri* persuasive. As noted in those two cases, § 1187 is silent about the detention of aliens pending their removal under the VWP, while § 1226 expressly provides for the detention of aliens during the pendency of their removal proceedings. Likewise, this Court agrees that the transfer of authority from the Attorney General to the Department of Homeland Security did not deprive the Secretary of Homeland Security of the authority to delegate bond authority to IJs just as the Attorney General had done, and there is nothing in the relevant statutes suggesting an intention on Congress's part to remove any delegated authority through this transfer of authority. Ultimately, in light of the express language of § 1226, and the lack of any detention authorization in § 1187(c)(2)(E), the BIA's determination in *A.W.* is not entitled to *Chevron* deference for the reasons expressed by Judge Vazquez in *Sutaj*.

As this Court has determined that § 1187(c)(2)(E) does not provide detention authority, the only statute which could provide for detention authority over Petitioner while her removal proceedings are pending is 8 U.S.C. § 1226. Indeed, Petitioner specifically argues that she is subject to detention under § 1226(c) because she is deportable for having committed one of the offenses enumerated by § 1226(c)(1)(B). The Government, however, contends that Petitioner cannot be held pursuant to § 1226(a) because no warrant was issued for her detention in the form of a Notice to Appear, as opposed to the notice she was provided, and cannot be held pursuant to § 1226(c) because she is not being removed *because* of her criminal history. Even if this Court were to assume, *arguendo*, that the Government is correct that § 1226(a) authority evaporates in the absence of a standard notice to appear, no such problem actually exists with the relevant statutory section here, § 1226(c).

Unlike § 1226(a), § 1226(c)(1)(B) expressly directs that the Government "shall take into custody any alien" who "is deportable by reason of having committed any offense covered in

section 1227(a)(2)(A)(ii)." As Petitioner correctly argues, the statute does not require that the alien in question *be removed* or placed into *removal proceedings* pursuant to her criminal history, only that she be "deportable" based on that history. Indeed, the Government specifically informed Petitioner that she was removable based on her criminal history when it issued its notice of intent to issue a removal order against her. (*See* Document 6 attached to ECF No. 14). Thus, there is no question, and Petitioner does not dispute, that she is "deportable by reason of having committed" one of the specified offenses that gives rise to § 1226(c) mandatory detention. Thus, as § 1187 does not provide for Petitioner's detention, her continuing detention arises under § 1226(c), and here entitlement to relief must be determined accordingly.

**2. The reasonableness of continued detention absent a bond hearing**

Because Petitioner is currently detained pursuant to § 1226(c), the legality of her continued detention absent a bond hearing is controlled by the Third Circuit's rulings in *Diop v. ICE/Homeland Sec.*, 656 F.3d 221, 231-35 (3d Cir. 2011), and *Chavez-Alvarez v. Warden York County Prison*, 783 F.3d 469 (3d Cir. 2015). In *Diop*, the Third Circuit held that § 1226(c) "authorizes detention for a reasonable amount of time, after which the authorities must make an individualized inquiry into whether detention is still necessary to fulfill the statute's purposes." 656 F.3d at 231. The determination of whether a given period of detention is reasonable under the circumstances is a fact specific inquiry "requiring an assessment of all of the circumstances of a given case." *Id.* at 234. Under *Diop*, the reasonableness of a period of detention is "a function of whether it is necessary to fulfill the purpose of the statute." *Id.*

While the Third Circuit declined to adopt a bright line rule for determining what length of time will render a given petitioner's detention unreasonable, *see* 656 F.3d at 234; *see also Carter*

*v. Aviles*, No. 13-3607, 2014 WL 348257, at *3 (D.N.J. Jan. 30, 2014), the Court of Appeals did provide some further guidance in that regard in *Chavez-Alvarez*. In *Chavez-Alvarez*, the Third Circuit held that, at least where the Government has not provided evidence of bad faith on the part of the petitioner, "beginning sometime after the six-month timeframe [upheld by the Supreme Court in *Demore* [*v. Kim*, 538 U.S. 510, 532-33 (2003),] and certainly by the time [the petitioner] had been detained for one year, the burdens to [the petitioner's] liberties outweighed any justification for using presumptions to detain him without bond to further the goals of the statute." *Chavez-Alvarez*, 783 F.3d at 478.

In this matter, the Government has not presented any evidence which would lead this Court to conclude that Petitioner litigated her removal proceedings in bad faith. Given that determination and the fact that Petitioner has now been held for well over a year without a bond hearing, this Court finds that this matter is not materially distinguishable from *Chavez-Alvarez*, and as a result, "the burdens to [Petitioner's] liberties [now] outweigh[] any justification for using presumptions to detain [her] without bond." *Id.* As such, this Court will grant the petition, and will direct an immigration judge to provide Petitioner with a bond hearing within ten days.

## III. CONCLUSION

For the reasons stated above, this Court will grant Petitioner's habeas petition and will direct an immigration judge to provide Petitioner with a bond hearing within ten days. An appropriate order follows.

Dated: August 14, 2017

        *s/ Susan D. Wigenton*
        Hon. Susan D. Wigenton,
        United States District Judge